**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANYA JONES,

Plaintiff,

Case No.

vs.

NATERA, INC.,

Hon.

Defendant.

---

## COMPLAINT

*Plaintiff, Anya Jones, by and through her attorneys, CARLA D. AIKENS, P.L.C., asserts there is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.*

Plaintiff, Anya Jones, by and through her attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint against Defendant, Natera, Inc.

## JURY DEMAND

NOW COMES PLAINTIFF, Anya Jones, and hereby makes her demand for trial by jury.

## JURISDICTION

1. At all times relevant to this Complaint, Plaintiff, Anya Jones (hereinafter referred to as "Plaintiff" or "Ms. Jones"), was a resident of Kentwood, Kent County,

in the State of Michigan.

2. Defendant, Natera, Inc. (hereinafter referred to as "Defendant" or "Natera"), is a for profit corporation with its principal place of business at 13011 McCallen Pass, Austin, Texas, that conducts regular and systematic business in the State of Michigan and employed Plaintiff, who performed her work remotely from Kent County, Michigan.

3. All or a substantial part of the actions giving rise to this Complaint took place in Kent County, State of Michigan, where Plaintiff performed her work.

4. This action is brought in this Court on the basis of federal question jurisdiction, pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq.

5. This is a suit authorized and instituted pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. The powers, remedies, and procedures available to Plaintiff are those set forth in Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5.

6. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

7. Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission (Charge No. 471-2025-08123), alleging disability discrimination in violation of the Americans with Disabilities Act.

8. The Equal Employment Opportunity Commission issued a Notice of Right to Sue dated December 5, 2025, and Plaintiff has satisfied all administrative prerequisites to the filing of this action.

## **VENUE**

9. Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district, where Plaintiff resided and performed her work.

## **STATEMENT OF FACTS**

10. Plaintiff, Anya Jones, was employed by Natera as a Manager, Denials and Appeals, and performed her work remotely from her home in Kent County, Michigan.

11. Plaintiff began her employment with Natera on or about April 7, 2025, at an annual rate of pay of $120,000.

12. Plaintiff is an individual with a disability. She has been diagnosed with major depressive disorder, single episode, moderate, and generalized anxiety disorder with panic attacks.

13. Prior to requesting accommodation and medical leave, Plaintiff consistently met performance expectations in her role and had no disciplinary history.

14. Before taking medical leave, Plaintiff requested flexible work hours as an accommodation for her health-related needs. This request was denied by her Associate Director, Tameika DeLeon.

15. Shortly after Plaintiff requested a flexible-hours accommodation, she was placed on a Performance Improvement Plan, despite having no prior disciplinary issues.

16. Plaintiff informed Human Resources of her health-related concerns and her need for accommodation and was advised to apply for short-term disability through Natera's leave administrator, TriStar, which she did.

17. As Plaintiff's condition progressed, she requested and was placed on approved medical and Americans with Disabilities Act leave beginning on or about June 20, 2025.

18. Plaintiff provided medical documentation as requested, participated in the interactive process, and remained under active medical care throughout her leave, including treatment through Pine Rest Christian Hospital Services. Plaintiff's healthcare providers supported her continued leave, and Plaintiff was never released to return to work during this period.

19. During Plaintiff's leave, Natera failed to timely submit the required employer documentation to Guardian, Natera's short-term and long-term disability carrier,

despite repeated requests from both Guardian and Plaintiff between June and September 2025.

20. As a direct result of Natera's failure to submit the required employer documentation, Plaintiff's short-term disability claim was denied and her long-term disability claim was delayed, leaving Plaintiff without disability income for an extended period of time.

21. Natera did not submit the required Employer Statement to Guardian until on or about September 4, 2025, months after Guardian and Plaintiff first requested it.

22. Plaintiff repeatedly complained, in writing, to Natera's Human Resources and Benefits personnel regarding the delay in her disability benefits, the coding of her leave, and the resulting loss of income, but Natera failed to timely remedy the situation.

23. In September 2025, Natera asserted that Plaintiff had been overpaid $11,146.54 in wages during her leave. Natera did not provide Plaintiff with a detailed reconciliation of this alleged overpayment, which Plaintiff disputes.

24. Plaintiff was notified that she would not receive her September 30, 2025 paycheck on account of the alleged overpayment, before any reconciliation was provided and without her written consent.

25. Plaintiff's healthcare providers recommended an extension of her leave beyond October 12, 2025 to continue treatment, and Plaintiff requested such an extension.

26. Rather than continue to accommodate Plaintiff, Natera declined to extend Plaintiff's leave beyond October 20, 2025 and concluded the interactive process, even though Plaintiff remained disabled, was under active medical care, and had not been released to return to work.

27. On or about October 21, 2025, Natera terminated Plaintiff's employment while she was still on approved medical leave, while she remained disabled and had not been medically cleared to return to work, and while her disability benefits remained unresolved.

28. Plaintiff's employer-sponsored benefits ended on October 31, 2025, while Plaintiff was still disabled and pursuing disability benefits.

29. As a result of Defendant's conduct, Plaintiff has incurred substantial medical expenses, including outstanding charges of $9,501.11 from Pine Rest Christian Hospital Services and $1,366.84 from Trinity Health, and has suffered a loss of income, benefits, and severe emotional distress.

30. Plaintiff requests damages as set forth herein.

## COUNT I

## DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 et seq.

31. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint, as if fully set forth herein.

32. At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the Americans with Disabilities Act ("ADA").

33. The ADA prohibits a covered entity from discriminating against a qualified individual on the basis of disability in regard to the discharge of employees and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

34. Plaintiff is a qualified individual with a disability. She has a physical or mental impairment that substantially limits one or more major life activities, has a record of such impairment, and was regarded by Defendant as having such an impairment.

35. Plaintiff was qualified for her position and, with or without reasonable accommodation, was able to perform the essential functions of her job.

36. Defendant discriminated against Plaintiff on the basis of her disability, as described above, including by refusing to continue accommodating her and

by terminating her employment while she remained disabled, on approved medical leave, and had not been released to return to work.

37. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

38. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

39. As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about her future, physical and emotional distress, and loss of the ordinary pleasures of everyday life. Plaintiff's damages further include medical expenses and other economic losses.

40. Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT II**

**FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 et seq.**

41. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint, as if fully set forth herein.

42. At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the ADA.

43. The ADA makes it unlawful for a covered entity to fail to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless the accommodation would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A).

44. Plaintiff is a qualified individual with a disability who could perform the essential functions of her position with reasonable accommodation.

45. Plaintiff requested reasonable accommodations for her disability, including flexible work hours and a leave of absence and extension of leave to continue medical treatment.

46. Defendant denied Plaintiff's request for flexible work hours, refused to extend her medical leave, and concluded the interactive process, despite Plaintiff's continued disability and the recommendation of her healthcare

providers, and without demonstrating that the requested accommodations would impose an undue hardship.

47. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

48. As a direct and proximate result of Defendant's failure to accommodate, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about her future, physical and emotional distress, and medical expenses.

49. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III

## RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12203

50. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint, as if fully set forth herein.

51. The ADA prohibits an employer from discriminating against any individual because that individual has opposed any act or practice made unlawful by the ADA or because that individual requested a reasonable accommodation. 42 U.S.C. § 12203.

52. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including when she requested reasonable accommodations for her disability and when she opposed and complained about Defendant's failure to accommodate her and to process her disability benefits.

53. Defendant, through its agents, had knowledge that Plaintiff engaged in protected activity because she made her requests and complaints directly to Defendant's management, Human Resources, and Benefits personnel.

54. After Plaintiff engaged in protected activity, Defendant's agents took adverse employment actions against Plaintiff, as alleged in the statement of facts, including placing her on a Performance Improvement Plan, withholding her pay, refusing to extend her leave, and terminating her employment.

55. Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard of Plaintiff's rights.

56. But for Plaintiff's protected activity, Plaintiff would not have suffered the adverse employment actions and damages set forth herein.

57. As a proximate result of Defendant's retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress, in an amount to be proved at trial.

58. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV

## DISABILITY DISCRIMINATION IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL 37.1101 et seq. ("PWDCRA")

59. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

60. At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the PWDCRA.

61. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

62. Defendant's conduct, as alleged herein, violated the PWDCRA, which makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position. MCL 37.1202.

63. Plaintiff is an individual with a disability that is unrelated to her ability to perform the duties of her position, and, as a result, is a member of a protected class pursuant to the PWDCRA.

64. Defendant discriminated against Plaintiff on the basis of her disability, as alleged in the statement of facts, including by refusing to continue accommodating her and by terminating her employment while she remained disabled and on approved medical leave.

65. Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's rights.

66. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, emotional distress, humiliation and embarrassment, loss of professional reputation, and medical expenses.

67. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V

## FAILURE TO ACCOMMODATE IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL 37.1101 et seq. ("PWDCRA")

68. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

69. At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the PWDCRA.

70. The PWDCRA requires that a person accommodate an individual with a disability for purposes of employment unless the person demonstrates that the accommodation would impose an undue hardship. MCL 37.1102.

71. Plaintiff notified Defendant of her disability and her need for accommodation, and requested reasonable accommodations, including flexible work hours and a leave of absence and extension of leave to continue medical treatment.

72. Defendant failed to accommodate Plaintiff, denied her request for flexible work hours, and refused to extend her medical leave, without demonstrating that the requested accommodations would impose an undue hardship.

73. Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's rights.

74. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, and has suffered mental anguish, emotional distress, humiliation and embarrassment, loss of professional reputation, and medical expenses.

75. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VI

## RETALIATION IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL 37.1101 et seq. ("PWDCRA")

76. Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint, as if fully set forth herein.

77. At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the PWDCRA.

78. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

79. Defendant's conduct, as alleged herein, violated the PWDCRA, which makes it unlawful to retaliate or discriminate against an individual because that individual has opposed a violation of the Act or made a charge, filed a complaint, or otherwise engaged in protected activity. MCL 37.1602.

80. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including when she requested accommodations for her disability and complained about Defendant's failure to accommodate her and to process her disability benefits.

81. Defendant, through its agents, had knowledge that Plaintiff engaged in protected activity because she reported the issues directly to multiple agents of Defendant.

82. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, including placing her on a Performance Improvement Plan, withholding her pay, refusing to extend her leave, and terminating her employment.

83. Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard of Plaintiff's rights.

84. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

85. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

86. Plaintiff requests relief as described in the Prayer for Relief below.

## RELIEF REQUESTED

PLAINTIFF, Anya Jones, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory and pecuniary damages in whatever amount to which Plaintiff is entitled;

2. Exemplary and/or punitive damages in whatever amount to which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: August 26, 2026

Respectfully Submitted,

CARLA D. AIKENS, P.L.C.

/s/ *Carla D. Aikens*
Carla D. Aikens (P69530)
*Attorney for Plaintiff*
615 Griswold St., Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com